UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MARKEITH L. BROWNING,

      Defendant.

_____/

Criminal Case No. 19-20203-2

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**ORDER GRANTING MARKEITH L. BROWNING'S MOTION FOR COMPASSIONATE RELEASE [67]**

On August 8, 2019, Markeith Browning pleaded guilty to conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and possession of a firearm after previously having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 45). On January 23, 2020, the Court sentenced Browning to ten years imprisonment. (ECF No. 57, PageID.243). On December 23, 2020, Browning moved for compassionate release, citing the risk posed to him by the pandemic in light of his health conditions. (ECF No. 67). The Court directed the Government to respond and produce certain BOP records. (ECF No. 70). The Court held a hearing on Browning's Motion [67] on January 13, 2021. For the reasons stated on the record and below, Browning's Motion [39] is **GRANTED**, and his sentence is reduced to time served.

## BACKGROUND

Browning was born in Ypsilanti, MI in 1975. (PSR ¶ 48). He lived with his mother, who was only fifteen years old when he was born, for most of his childhood. (*Id.*). When Browning was approximately thirteen, his mother became addicted to heroin and ceased to be a stable caregiver. (*Id.* ¶¶ 49). He thereafter resided with his father and stepmother, however, his father was often absent due to multiple terms of incarceration. (*Id.*). Browning's mother passed away in 1995 due to complications from HIV. (*Id.* ¶ 48). Browning's younger brother passed away in 1999 from a self-inflicted gunshot wound. (*Id.* ¶ 50). Browning's father passed away most recently, in 2018, from colon cancer. (*Id.* ¶ 49). Browning remains close with his younger sister, stepmother, and half-siblings, all of whom live in Ypsilanti. (*Id.* ¶ 50). Browning also has three children, two of whom live in Michigan. (*Id.* ¶ 51-52).

Browning has a lengthy history of substance abuse. He began using marijuana at age twelve or thirteen and began using cocaine heavily when his mother died. (PSR ¶ 57). Browning completed the non-residential drug abuse program while in BOP custody between 2007 and 2011 and has not used cocaine in recent years. (*Id.* ¶¶ 58-59).

Browning's criminal record dates back to age seventeen. (*Id.* ¶ 34). He has been convicted of several felonies, some of which have involved violence, but in recent years, most of Browning's convictions have been related to drugs. (*Id.* ¶¶ 38-

41). The instant offense tracks this pattern. Browning was found to be the leader of three-person drug-trafficking organization ("DTO") distributing large quantities of cocaine and heroin brought in from Chicago. (*Id.* ¶¶ 12-17). He is held responsible for making at least three such trips to Chicago and possessing with intent to distribute 2,025 kilograms of heroin and cocaine, as well as possessing a firearm after having previously been convicted of a felony. (*Id.* ¶ 17-18).

Browning is currently forty-five years old, incarcerated at FCI Gilmer, and scheduled for release on October 10, 2027. *Find an Inmate*, FED. BUREAU PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register No. 40836-039) (last visited Feb. 25, 2021).

## ANALYSIS

**I. EXHAUSTION**

Before a petitioner moves for compassionate release under 18 U.S.C. § 3582(c)(1), they must either exhaust their administrative remedies with the BOP or wait thirty days from when they filed a request with their warden. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Browning submitted a request to his warden on June 3, 2020. (ECF No. 77, PageID.688). His request was denied on June 11, 2020. (*Id.* at 686). The Government concedes that Browning has satisfied the exhaustion requirement. (ECF No. 75, PageID.659). Accordingly, the Court now must now proceed through a three-step inquiry:

> At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). . . . At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." [*Dillon v. United States*, 560 U.S. 817, 827 (2010).]

*United States v. Jones*, No. 20-3701, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (first four alterations in original) (footnotes omitted).

## II. EXTRAORDINARY AND COMPELLING REASONS

Browning's health conditions appear to be some of the most serious this Court has seen, particularly since "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/9EP5-Q9SS] (last updated Dec. 29, 2020).

First, Browning has stage three chronic kidney disease. (ECF No. 78, PageID.727). Health authorities agree that "[h]aving chronic kidney disease of any stage increases [one's] risk for severe illness from COVID-19." *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION.

Second, Browning is obese, with a body mass index ("BMI") of 33.3. (ECF No. 79, PageID.799). "Having obesity, defined as a [BMI between thirty and forty], increases your risk of severe illness from COVID-19." *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION.

Third, Browning has unspecified interstitial pulmonary disease, also known as interstitial lung disease, which is "an umbrella term for . . . diseases that cause scarring (fibrosis) of the lungs" and which "makes it difficult to breathe and get oxygen to the bloodstream." (ECF No. 78, PageID.727); *Interstitial Lung Disease (ILD)*, AM. LUNG ASS'N, https://www.lung.org/lung-health-diseases/lung-disease-lookup/interstitial-lung-disease [https://perma.cc/SV7E-UPKS] (last visited Jan. 12, 2021). A recent study found that "[p]atients with ILD are at increased risk of death from COVID-19, particularly those with poor lung function and obesity" and that "[s]tringent precautions should be taken to avoid COVID-19 in patients with ILD." Thomas M. Drake et al., *Outcome of Hospitalization for COVID-19 in Patients with Interstitial Lung Disease: An International Multicenter Study*, 202 AM. J. RESPIRATORY & CRITICAL CARE MED. 1656, 1657 (2020).

Fourth, Browning has hypertension, which may put him at increased risk of severe illness from COVID-19. (ECF No. 78, PageID.727); *see People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION.

Lastly, Browning's medical records reflect repeated instances of acute

bronchitis, trouble breathing, and a recent seizure apparently arising therefrom. (ECF No. 68, PageID.446-48, 481; ECF No. 79, PageID.897). It is unclear whether Browning's repeated bouts of bronchitis and breathing issues are related to his interstitial pulmonary disease or whether he may be suffering from chronic bronchitis, a condition included in chronic obstructive pulmonary disease ("COPD"), which would further increase his risk of severe illness from COVID-19. *See Chronic Bronchitis*, AM. LUNG ASS'N, https://www.lung.org/lung-health-diseases/lung-disease-lookup/chronic-bronchitis [https://perma.cc/LC3A-HFAF] (last visited Jan. 12, 2021); *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION. In either case, Browning's health issues are obviously serious.

In addition to suffering from failing health, Browning also faces unsafe conditions at FCI Gilmer. These conditions were put on display at Browning's hearing when the staff member who escorted Browning into the video conference room was observed not following masking protocol. In light of these shortfalls in adhering to precautionary measures, it unsurprising that at the time of Browning's hearing, eighty-two inmates and twenty-seven members of staff had tested positive for COVID-19. *COVID-19 Coronavirus*, FED. BUREAU PRISONS, https://www.bop.gov/coronavirus/ [https://perma.cc/KSC6-3SWC] (last updated Jan. 11, 2021). Accordingly, even though the number of cases at FCI Gilmer has

decreased over the last several weeks and vaccinations have begun,[1] the Court finds that Browning remains at high risk of death or serious illness from COVID-19.

Where, as here, an "incarcerated person[] file[s] [a] motion[] for compassionate release, [the district] judge[] may skip step two of the § 3582(c)(1)(A) inquiry and ha[s] full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111; *see United States v. Elias*, 984 F.3d 516, 519-20 (6th Cir. 2021) (citing *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1007 (2020)). The Court concludes that Browning's serious overlapping medical conditions and the threat of death or serious illness from COVID-19 at FCI Gilmer constitute extraordinary and compelling reasons for release. *See Elias*, 984 F.3d at 521 (noting that "[r]elying on official guidelines from the CDC is a common practice in assessing compassionate-release motions").

### III. 3553(A) FACTORS

The last step a district court contemplating a motion for compassionate release must take is to consider the applicable sentencing factors listed in 18 U.S.C. § 3553(a). "'[A]s long as the record as a whole demonstrates that the pertinent factors were taken into account by the district court[,]' a district judge need not 'specifically articulat[e]' its analysis of every single § 3553(a) factor." *Jones*, 980 F.3d at 1114

---

[1] There is no evidence that Browning has been, or will soon be, vaccinated.

(quoting *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010)). With that in mind, the § 3553(a) factors are as follows:

> **(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> [. . .]
> (5) any pertinent policy statement—
> [. . .]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The Court's consideration of these factors is demonstrated both in the analysis below and on the record of the January 13, 2021 hearing.

Browning is serving his second federal sentence and is more than six years away from his anticipated release date. (ECF No. 76, PageID.677, 682). These facts, taken on their own, might persuade the Court that release was not warranted under the § 3553(a) factors. However, Browning's criminal history does not exist in a vacuum, and it is the Court's responsibility to evaluate Browning and the totality of his circumstances as they are today, not just as they were at the time of sentencing.

Browning has been incarcerated at FCI Gilmer since March of 2020. (*Id.* at 677). Prior to his arrival at Gilmer, Browning was detained at FCI Milan Detention Center where, per BOP protocol, he was kept in around-the-clock lockup. At this point, Browning has been imprisoned for nearly two years. (*Id.* at 678).

Despite Browning's stated interest in using his time in prison to improve himself, COVID-19 has largely prevented BOP officials at FCI Gilmer from offering Browning effective correctional treatment or educational programming. (PSR ¶ 59). Browning has made the best of this situation by using his time to learn about his recently discovered health problems, but on the whole, incarceration has provided few, if any opportunities, for structured self-improvement. Moreover, by not strictly enforcing safety measures like proper mask-wearing, the BOP has necessarily failed to provide adequate medical care for Browning. These shortcomings appear unlikely to abate in the near future. *See Correcting Myths and Misinformation About BOP and COVID-19*, FED. BUREAU PRISONS (May 6, 2020),

https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19.pdf [https://perma.cc/6FLK-9QKM] (clarifying that BOP "[s]taff are not required . . . to wear masks" in non-isolation and non-quarantine units); *see also* Memorandum from Andre Matevousian, Assistant Dir., Corr. Programs Div., & L. Cristina Griffith, Assistant Dir., Hum. Res. Mgmt. Div., to Chief Exec. Offs., Fed. Bureau of Prisons (Aug. 24, 2020), https://www.bop.gov/foia/docs//Mandatory_Use_Face_Coverings_for_Staff_08242020.pdf [https://perma.cc/Y4WT-S6WS] (allowing staff to remove masks under certain circumstances).

In terms of both specific and general deterrence, there is overwhelming evidence in the scientific literature that "the *certainty* of being caught is a vastly more powerful deterrent than the [severity of the] punishment." U.S. DEP'T JUST., NAT'L INST. JUST., FIVE THINGS ABOUT DETERRENCE 1 (2016), https://www.ojp.gov/pdffiles1/nij/247350.pdf [https://perma.cc/PV5R-9QP4].

> *Severity* refers to the length of a sentence. Studies show that for most individuals convicted of a crime, short to moderate prison sentences may be a deterrent but longer prison terms produce only a limited deterrent effect. . . .
>
> *Certainty* refers to the likelihood of being caught and punished for the commission of a crime. Research underscores the more significant role that certainty plays in deterrence than severity — it is the certainty of being caught that deters a person from committing crime, not the fear of being punished or the severity of the punishment. Effective policing that leads to swift and certain (but not necessarily severe) sanctions is a better deterrent than the threat of incarceration. In addition, there is

> no evidence that the deterrent effect increases when the likelihood of conviction increases. Nor is there any evidence that the deterrent effect increases when the likelihood of imprisonment increases.

*Id.* at 2; *see also* Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 CRIME & JUST. 199, 201 (2013) ("[T]here is little evidence of a specific deterrent effect arising from the experience of imprisonment compared with the experience of noncustodial sanctions such as probation. Instead, the evidence suggests that reoffending is either unaffected or increased [by longer sentences]."). In view of this evidence, the Court finds that Browning's swift arrest and prosecution, combined with the period of imprisonment he has already endured and the eight years of Court-imposed supervision he will soon face, are sufficient, but not greater than necessary, to adequately provide both specific and general deterrence.

In terms of protecting the public, the Court notes that although Browning has several prior offenses, including previously violating probation, his record within the last fifteen years is almost entirely comprised of non-violent, drug-related offenses. (PSR ¶¶ 34-41). Moreover, since entering custody in April 2019, Browning appears not to have received any discipline and, critically, has experienced a severe decline in health. (ECF No. 76, PageID.678). While Browning had previously only struggled with high blood pressure, he now suffers from stage three chronic kidney disease, interstitial lung disease, and seizures that have necessitated emergency treatment. (PSR ¶ 55; ECF No. 78, PageID.727; ECF No. 79, PageID.762).

Browning is currently forty-five years old and, especially in light of his new health conditions, is far less likely to engage in criminal activity now than he was before. *See* U.S. SENT'G COMM'N, THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS 23 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf [https://perma.cc/MW4K-CPQJ]. Against this backdrop, the Court finds Browning's "high risk" PATTERN score and criminal record to be a poor barometer of dangerousness. *See United States v. Bass*, No. 21-1094, 2021 U.S. App. LEXIS 3334, at *9 (6th Cir. Feb. 5, 2021) (noting "the limitations of . . . [a defendant's] PATTERN score in light of [variables] that fell outside its quantifications"); *see also* P'SHIP ON AI, ALGORITHMIC RISK ASSESSMENT AND COVID-19: WHY PATTERN SHOULD NOT BE USED 2 (2020), https://www.partnershiponai.org/wp-content/uploads/2020/04/Why-PATTERN-Should-Not-Be-Used.pdf [https://perma.cc/6PA7-LXYB] (explaining that "PATTERN was not developed with the intent of informing anything akin to COVID-era decisions, nor was it validated on data that reflects the present social and economic landscape").

Browning's detailed release plan also reassures the Court that he will not pose a danger to the community. At the hearing, it was suggested that Browning might be a good fit for the Salvation Army's Adult Rehabilitation Center Program. Upon further consideration, however, the Court finds that in light of COVID-19 and

Browning's health conditions, the dormitory-style housing arrangement offered by the Program would not be appreciably safer than FCI Gilmer. Instead, upon release, Browning will be employed by an automotive parts manufacturer and will reside with his stepmother, who will act as a third-party custodian. Critically, Browning had neither a job nor a family-supervised living situation at the time he committed the instant offense. The Court is confident that these new support systems, combined with the guidance of the U.S. Probation Department, will ensure Browning leaves his prior lifestyle behind. The Court also credits Browning's testimony that he is determined to be a positive influence on his youngest son, who is fifteen. (ECF No. 67, PageID.427). This, he will only be able to do if he stays out of trouble.

Accordingly, in spite of Browning's record, the Court finds that the risk posed by his release, while not zero, is small enough to be outweighed by other considerations, such as the risk to Browning's life if he remains in prison. Moreover, this limited risk to the public can and will be mitigated by the Court imposing a period of electronic monitoring and home confinement as a condition of Browning's supervised release.

Next, although Browning has served only a fraction of his sentence, the Court notes that his imprisonment has been exceptionally restrictive. Prior to beginning his sentence at FCI Gilmer, Browning was in around-the-clock lockup in pretrial detention (due to no fault of his own). And FCI Gilmer has been in varying states of

lockdown since Browning arrived. In short, the nearly two years during which Browning has been imprisoned have been unusually burdensome, and accordingly, harsher punishment than is ordinarily the case. The Court therefore finds that a sentence of time served with a period of home detention as a condition of supervised release is sufficient to promote respect for the law, provide just punishment, and reflect the seriousness of his non-violent offense.

Accordingly, the Court concludes that the § 3553(a) factors support a reduction in sentence to time served followed by eight years of supervised release. Upon release, Browning will be subject to electronic monitoring and permitted to leave his stepmother's home only for work and other predetermined obligations. This period of home detention and electronic monitoring will last for six months.

## CONCLUSION

**IT IS ORDERED** that Browning's Motion for Compassionate Release [67] is **GRANTED** and that his sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Browning be **IMMEDIATELY RELEASED** to begin his eight-year term of **SUPERVISED RELEASE**, as outlined by the January 28, 2020 Judgment (ECF No. 57, PageID.244-46), including the following additional Special Conditions:

> **The defendant shall undergo a strict fourteen-day quarantine upon his release and shall fully comply with any applicable state or local stay-at-home orders, social distancing guidelines, or other public health restrictions.**

**The defendant shall participate in the Location Monitoring Program for 180 consecutive days and shall abide by all the requirements of that program. The defendant is restricted to his residence at all times, with the exception of employment, education, religious services, medical treatment (including mental health, substance abuse, and appointments for family members), attorney visits, court appearances, court-ordered obligations, and other activities as approved in advance by the probation officer. Technology at the discretion of the probation office. The Court waives the cost of the program.**

**SO ORDERED**.

Dated: March 2, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge